LA GRANGE BUTTER TUB COMPANY, *Appellant*, v. NATIONAL BANK OF COMMERCE *et al.*

Division Two, May 24, 1894.

1. **Insolvent Corporation**: ATTACHMENT: PREFERENCE. A creditor may obtain preference by attachment over other creditors of an insolvent corporation although advised so to do by a director of the corporation.

2. ————: EQUITY: PRIOR LIENS. A court of equity taking charge of an insolvent corporation for the purpose of winding it up will respect liens and preferences already acquired against its assets.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*W. C. & J. C. Jones* for appellant.

(1) The court erred in dismissing plaintiff's bill. (2) There should have been a decree in accordance

with the prayer in plaintiff's petition. (3) The court erred in the exclusion of the testimony showing that no defense was made to the attachment suits brought by other creditors. *Woolen Mills v. Kampe*, 38 Mo. App. 229; *Williams v. Jones*, 23 Mo. App. 132; *Roan v. Winn*, 93 Mo. 503; *Foster v. Company*, 92 Mo. 79; Morawetz on Corporations, secs. 582, 579; *Eppright v. Nickerson*, 78 Mo. 482; *Chew v. Ellingwood*, 86 Mo. 260; *State ex rel. v. Brockman*, 39 Mo. App. 131; *Marr v. Bank*, 4 Cold. 471.

*Albert Arnstein* for respondents.

(1) So long as the directors and officers of an insolvent corporation have and retain control of its affairs, it is liable to all process to which an individual is subject. (2) Where a corporation fraudulently conceals its assets, it subjects itself to the provisions of the attachment act. That act applies to corporations as well as individuals. *Roseboom v. Whittaker*, 132 Ill. 81; *Life Association v. Fassett*, 102 Ill. 315; *Foster v. Mullanphy Planing Mill*, 92 Mo. 79. (3) The assets of an insolvent corporation become "trust funds" only from the time when a court of equity is properly appealed to, to protect and distribute the same upon equitable principles, and on such application asserts control over them; and, until a court of equity declares the insolvency and the trust, liens which have theretofore attached under proceedings instituted by creditors, remain affixed thereto. *Van Alstyne v. Cook*, 25 N. Y. 489; *Roseboom v. Whittaker*, 132 Ill. 81. (4) The giving of a voidable preference by an insolvent corporation (under recent decisions of our courts) contemplates some affirmative act on the part of the officers of the corporation, as such, whereby its life is terminated. *Kingsley v. Bank*, 31 Hun, 329-337.

(5) It was never contemplated that the securing of a preference by a diligent creditor, by means of attachment, where there was ample ground for the same, could be construed into a "preference," merely because the officers of the corporation were friendly disposed to the attaching creditor, and did not add perjury to their frauds, by swearing to a false plea in abatement. *Hall v. Glessner*, 100 Mo. 156; *Varnum v. Hart*, 119 N. Y. 101. (6) It is wholly immaterial what defenses, if any, may have been interposed by the company in other actions; they could not affect the merits of this one, there being no defense thereto. Equally immaterial is it from what source the information came which caused the attachment, if ground therefor existed.

BURGESS, J.—This is a proceeding by petition in the nature of a creditor's bill, brought on behalf of plaintiff and all other creditors of the Batchelder Egg Case Company, its object being to subject $5,000 in the hands of the defendant, the National Bank of Commerce, to the payment of the general indebtedness of the Batchelder Egg Case Company, and to restrain the sheriff from paying the same to the defendant bank.

The Batchelder Egg Case Company was incorporated under the laws of this state. On August 16, 1890, it owed the Bank of Commerce $65,000. On that day the company owned a box mill in Arkansas, which was afterwards sold for $31,000; a stock of goods in St. Louis, worth about $7,000; and a stock of goods in Chicago, worth about $3,000. It owned no other property. Its bills receivable did not exceed $1,500, while its aggregate indebtedness was $130,000. It owed the plaintiff something like $2,000, and various parties, sums amounting to about $10,000, which was

past due, and for which the Egg Case company was being hard pressed. The cash on hand did not amount to exceeding $200 or $300. On the night of August 16 the company completed arrangements to sell out its Chicago stock to the Creamery Package Company, which was closed on the following Monday, the eighteenth. On the sixteenth, which was Saturday, the Egg Case Company employed Mr. Douglass, an attorney at St. Louis, to go to Helena, and there make a bill of sale to the defendant bank of its Helena plant, or run an attachment against the plant in favor of the defendant bank. On the morning of the eighteenth, between 7 and 8 o'clock, Clark, the cashier and one of the directors of the Egg Case Company, went with Paxton, the company's St. Louis attorney, to the defendant bank and told the cashier that the company was in bad shape, and that they thought it best for him to bring an attachment on the stock of goods at 935 North Main street. The stock of goods was the same day attached by defendant bank. Other creditors of the Egg Case Company ran attachments, but the assets in St. Louis were absorbed by the first attachment, that of defendant bank. The bank realized nothing from the Arkansas property, as that had been absorbed by other creditors.

The evidence further shows that J. H. Batchelder and Mark D. Batchelder, the president and secretary of the Egg Case Company, had, during the week prior to the failure, concealed the funds belonging to the company to the extent of at least $3,000; "they put it in their pockets." Part of the money so concealed by them was the proceeds of the draft which the bank had cashed for the company on the Friday preceding. The proceeds of the merchandise sold in Chicago, $3,000, were never accounted for.

The Egg Case Company made no defense to the

attachment suit instituted by the bank, but plaintiff offered to show that it did defend the suits brought by the other St. Louis creditors. The testimony was excluded by the court.

On final hearing the bill was dismissed and plaintiff appeals to this court.

While it may be conceded that corporate assets are regarded as a trust fund for the benefit of all the corporation creditors, the rule as announced by this court in *Foster v. Planing Mill Co.*, 92 Mo. 79, is that a corporation may, when acting within the scope of the purpose for which it was incorporated, do any act in furtherance of those purposes, and, although insolvent, it may prefer some creditors to others, even though such creditors be among the directors of the corporation, providing such preference is made in good faith and to a *bona fide* creditor. This rule only applies to the acts of the corporation while it is a going concern and before it has gone into the hands of a receiver or liens have attached to the corporate property.

It is true, as held in *Roan v. Winn*, 93 Mo. 503, and authorities cited, that after confessed insolvency, the directors of a corporation can not in equity secure any advantages to themselves. This is because they represent all the creditors and occupy the position of trustees toward them, and a trustee, or a person standing in a similar or fiduciary relation, will not, in equity, be allowed to take advantage of his position, exercise his power, or to manage or appropriate the property of which he has the control for his own profit and to his own advantage, at the expense of those for whom he is acting.

But a creditor, not a director, and one who has no interest in the corporation other than that of a creditor, occupies a very different position. He is not a trustee, and in his efforts to collect his debt is representing no

one but himself. The mere insolvency of the corporation did not have the effect of depriving the defendant bank of its legal remedies and the right to sue by attachment and thus acquire a superior lien to any and all other creditors, if fortunate enough to do so and it felt so inclined. In doing so it merely pursued a remedy that the law provided for it and others similarly situated, and it was certainly guilty of no fraud or unfairness in doing that which the law provided that it might do.

As was said in *Roseboom v. Whittaker*, 132 Ill. 81, "Appellants insist that, if the corporate assets became a trust fund for the payment of the corporate debts the instant the corporation became insolvent, said assets became a trust fund for the payment of *all* the debts *pro rata*, and that the decree, therefore, is erroneous in giving the judgments in the attachment suits a preference over the claims of other creditors. The attachment suits were commenced and the attachment writs levied before the filing of the original bill, and before the jurisdiction of a court of equity was invoked for the purpose of taking into its hands the corporate assets and administering them upon equitable principles. The mere insolvency of a corporation can not have the effect of depriving creditors of their legal remedies, but they are at liberty, notwithstanding the insolvency, to sue the corporation in an action at law, and by means of such proceeding, establish a specific lien upon the property seized by attachment or execution. Such lien, when perfected, will doubtless entitle the creditor acquiring it, to a preference over other unsecured creditors. After the aid of a court of equity has been invoked and that court has taken the assets of the insolvent into its hands, its jurisdiction becomes necessarily exclusive, and it will proceed, in administering the insolvent estate, upon the maxim that equality is

equity. After that jurisdiction has attached, ordinarily, no creditor can pursue a legal remedy, at least, in such way as to obtain for himself a preference. But the court of equity is bound to respect legal rights and preferences already acquired, and to make distribution accordingly.''

There was no fraudulent collusion shown to have existed between the officers of the Egg Case Company and the defendant bank in order to give it a preference over others of its creditors. The mere fact that Clark, the cashier, and one of the directors of that company, stated to the officers of the defendant bank that they were in bad shape and that they had better attach the St. Louis property, did not show such fraud.

The assets of the insolvent corporation are trust funds for the benefit of all its creditors, in so far as to prohibit the disposition of its assets towards the payment of debts due its officers, or by securing such debts by creating liens to secure the payment thereof so as to thereby give them a preference over other creditors, or from the time when a court of equity acquires jurisdiction over it for the purpose of winding up its affairs and distributing the proceeds arising from a sale of the assets equitably among the creditors.

In case of an insolvent partnership a court of equity will make distribution of the partnership assets *pro rata* among the corporation creditors, and to that end will regard the corporation property as a trust fund. It is in this sense and upon this principle that the assets are trust funds. They are trust funds when a court of equity is appealed to in behalf of any member of the corporation, or creditor, to protect and distribute the assets upon equitable principles, but there is no rule which makes them trust funds in any other sense than as hereinbefore stated, nor is there any law or rule in equity which prohibits any creditor of the corporation

from obtaining a lien upon the assets by due process of law, by a hostile proceeding. *Van Alstyne v. Cook,* 25 N. Y. 489; *Roseboom v. Whittaker, supra.*

There are courts of high authority, notably Tennessee, which hold that, after a corporation has become insolvent and ceased to be a going concern, then the assets must be distributed *pro rata* among all the creditors and that no creditor can acquire a prior lien over others, by reason of the seizure of the corporate property under attachment or execution in his favor. *Smith v. Ins. Co.,* 3 Tenn. Ch. 502; *Marr v. Bank,* 4 Cold. 471. We feel inclined, however, to follow the rule as announced by the courts of New York and Illinois, believing them, as we do, to be in accordance with the weight of authority. With the concurrence of the other judges of this division, the judgment of the circuit court is affirmed.