MOON BROS. CARRIAGE CO. ET AL. V. WAXAHACHIE GRAIN AND IM-
PLEMENT CO. ET AL.

No. 886.

**1.  Notice of Appeal—Verbal Omission.**

A recital in the concluding portion of a decree, that certain parties "in open court give notice to the Court of Civil Appeals of Fifth District," sufficiently shows that notice of appeal was given.

**2.  Practice—Placing Witnesses Under Rule.**

The action of the trial court in refusing to place under the rule a witness who was also a party to the suit, will not be revised on appeal unless it is shown to have worked an injury.

**3.  Mercantile Corporation—Retirement of Stock—Payment of Dividends.**

Where undivided profits of a mercantile corporation were applied to the purchase and retiring of its stock, the remaining stockholders cannot be charged with holding the stock so retired, and held liable under article 566, section 24, Sayles' Civil Statutes, providing that any person holding more than $500 of the stock of such a corporation shall be liable for all its debts; nor would such application of the money constitute the payment of dividends, rendering the directors liable under article 594, where the corporation is insolvent.

**4.  Practice on Appeal—Contempt of Court.**

The action of the trial court in refusing to punish for an admitted contempt of court a director who had disposed of corporate assets after the appointment of a receiver for the corporation, is a matter of discretion which will not be revised on appeal.

**5.  Corporation—Borrowing Money Beyond Capital Stock.**

Under article 577, Sayles' Civil Statutes, providing that corporations shall have power to borrow money on the credit of the corporation, not to exceed its authorized capital stock, a note for a loan made to a corporation for a larger amount is valid and enforceable, at least to the extent of the capital stock.

**6.  Insolvent Corporation—Right of Creditors to Secure Preference Lien by Attachment.**

When an insolvent corporation is so circumstanced that its early cessation of business must result, it may be proceeded against by attachment of its property by creditors, who may acquire thereby a valid preference lien upon such property.

APPEAL from Ellis.   Tried below before Hon. J. E. DILLARD.

*E. P. Powell, C. M. Supple, Skinner & Hawkins* and *W. L. Harding,* for appellants.—1.   A creditor can not by attachment proceedings gain a preference lien on the property or effects of a private corporation which is insolvent, and its embarrassments are such that an early suspension and failure must ensue, but in such case, its assets are trust funds for the payment of its creditors ratably.   Rev. Stats., art. 1465; Lyons-Thomas Hardware Mfg. Co. v. Perry Stove Mfg. Co., 86 Texas, 143.

2.   The court erred in not holding that the bank's debt was void as to plaintiffs because it was for loaned money in excess of $5000—the authorized capital stock of said Waxahachie Grain and Implement Co. Rev. Stats., art. 577.

*M. B. Templeton* and *G. C. Groce*, for appellee, Citizen's National Bank.—1. The fact that a corporation is insolvent does not deprive a creditor of the right to sue it, and by attachment fix a lien upon its property, which will be superior to the rights of other creditors, and which will not be displaced by the subsequent appointment of a receiver of the insolvent corporation. Harragan v. Quay, 27 S. W. Rep., 897; Florsheim Bros. Dry Goods Co. v. Wettermark, 30 S. W. Rep., 505; Morawitz, Corporations, sec. 863; Rosenbaum v. Warner, 23 N. E. Rep., 339; Varnum v. Hart, 23 N. E. Rep., 183; Jones v. Bank of Leadville, 17 Pac. Rep., 272-280; Breene v. Merchant's Bank, 17 Pac. Rep., 280; Throop v. Lithographing Co., 26 N. E. Rep., 742; Stout v. Lye, 103 U. S., 66; Hollis v. Briarfield, C. & I. Co., 150 U. S., 386; Van Alstyne v. Cook, 25 N. Y., 489; Lagrange Butter Tub Co. v. National Bank of Commerce, 26 S. W. Rep., 710; Mill v. Kampe, 36 Mo. App., 229; Cary v. Woodsworth, 11 South. Rep., 333; O'Bear Jewelry Co. v. Volfer, 17 South. Rep., 525.

2. If the rights of a creditor of a corporation to sue it and pursue all legal remedies, are abridged by insolvency of the corporation, it is only when the corporation has ceased to do business, and is no longer a "going concern." Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Texas, 143; Sanford Fork and Tool Co. v. Howe Brown Co., 15 U. S. Supt. Ct. Repr., 621; Curtis v. Levitt, 15 N. Y., 6, 109–139–198; Dutcher v. Importers Nat. Bank, 59 N. Y., 5; Comfort v. McTeer, 8 Lea, 660; Tradesman Co. v. Knoxville Car Wheel Co., 32 S. W. Rep., 1097–9.

3. A violation by a corporation of its charter powers presents a question between it and its creating government, and may authorize its stockholders, or other persons interested, to enjoin other violations, but, in the absence of express statute to that effect, contracts in excess of statutory limitations are not void, and where an indebtedness in excess of statutory limitations is incurred by a corporation, the contract is binding where it has actually received the money borrowed; and if the corporation cannot deny its liability neither can its general creditors. Railway Co. v. Gentry, 69 Texas, 632; Bond v. Terrell Mf'g. Co., 82 Texas, 309; Gold Mining Co. v. Bank, 96 U. S., 640; Union Bank v. Matthews, 98 U. S., 621; Bank v. Whitney, 103 U.'S., 99; Garrett v. Burlington Plow Co., 70 Iowa, 697; Logan v. Building Association, 28 S. W. Rep., 141.

*A. A. Kemble*, for appellees, Adkisson and Dunlap.

JAMES, CHIEF JUSTICE.—On October 18, 1893, Moon Bros. Carriage Company, Padgitt Bros., T. H. Smith & Co., and Winona Wagon Company, filed a bill in their own behalf and for all other creditors of the Waxahachie Grain & Implement Company, who might see fit to join in the suit, against the said grain and implement company, and against the Citizens National Bank of Waxahachie.

On May 5, 1894, an amended original petition was filed, adding as

plaintiffs a number of other creditors of the said grain and implement company. The purpose of the bill, as is stated in appellants' brief, was to recover judgments on the various debts against the grain and implement company, alleging its insolvency, asking for a receiver for its assets, etc., and alleging that the Citizens National Bank of Waxahachie, a defendant, had filed suit and attached the goods of said company on September 30, 1893, which attachment and debt it was based upon were collusive, fraudulent and void as to the plaintiffs, and were void for the further reason that the debt was for borrowed money in excess of the authorized capital stock of the said grain and implement company.

By this amendment G. L. Adkisson and J. F. Dunlap were made defendants, it alleging that they were liable for all of plaintiffs' debts by reason of each of them owning more than $500 of the stock of the corporation, and by reason of their drawing dividends; that Adkisson was liable on account of money taken out of the corporation funds and charged to his account while he was its director and manager, and of notes, accounts and cash of said corporation in his possession on September 30, 1893, at the date of the bank's attachment, and praying that he be compelled to turn over all such effects to the receiver.

On October 20, 1893, the court appointed a receiver who, on October 23, qualified and took the goods then held by the sheriff under the bank's attachment. On October 26, 1893, an order was made for Adkisson, a manager and director of the grain and implement company, to deliver to the receiver its books, etc.

The Citizens National Bank made general denial, and pleaded its attachment lien as a prior charge on the fund held by the receiver from the sale of the attached goods; denied fraud, also notice of the insolvency of the corporation, and plead that the grain and implement company had not ceased business at the time of the attachment, and also disclosed the collaterals it had. Dunlap and Adkisson pleaded a general denial.

The cause was tried by the court, and judgment was rendered in favor of the bank for a preference lien as claimed, discharging Dunlap, and in favor of the several plaintiffs for their respective claims against the grain and implement company, and in favor of plaintiffs against Adkisson for $5021.24, with the further order that Adkisson pay or bring into court $250, or be held in contempt. The plaintiffs alone appeal.

A motion is made by appellee to dismiss the appeal, for the failure of the record to show notice of appeal. The concluding clause of the decree reads: "Plaintiff and defendant G. L. Adkisson except to the judgment, and in open court gives notice to the Court of Civil Appeals of fifth district." This can be understood only to mean that they gave notice of appeal, and is sufficient.

The facts relevant to the judgment in view of the errors assigned are as follows: At the time of the attachment, the grain and implement

company, a corporation existing under the laws of Texas, and organized in 1888, was insolvent, and the conditions surrounding it were such that it could not hope to continue its business much longer, and an early suspension must, in the ordinary course of events, have ensued.

The claim for which the bank attached consisted of two notes of $5519.25 and $2500, with interest and attorney's fees. The attachment was levied on all the grain and implement company's stock of goods, leaving it certain cash and bills receivable, and some goods it held for sale on commission.

There was no collusion between the bank and the grain and implement company in reference to the suing out of the attachment, nor was there any knowledge on the part of the bank that the ground upon which the attachment was had, was false; and there was reasonable basis on the part of the bank's officers for the belief that the ground existed.

The capital stock of the grain and implement company was five thousand dollars. Its business was shown to be the handling of machinery, grain, farming implements, coal, etc., and it handled similar goods of certain firms on commission, which was only a small and incidental part of the business.

The several original stockholders each took $500 of the stock, including Adkisson and Dunlap. In 1891, Adkisson was manager and Dunlap was bookkeeper, and they, with corporate funds (the evidence is with undivided profits) took up or retired the shares of the others with two exceptions; and in 1891, Dunlap parted with his stock in the same way. After that, Dunlap was connected with the business only as a bookkeeper.

The bank in the attachment suit on December 9, 1893, in the same court, recovered judgment for $9135.20, with foreclosure of the attachment, "subject to the orders to be made in the present suit."

There is no evidence that when the stock was bought in or retired as above stated, the company was insolvent; on the contrary, we must conclude from the testimony that the profits were so invested that it was solvent. The debts of appellants appear to have been made subsequent to such transactions.

As to the relief sought against Dunlap, the fact is that he had ceased to have any connection with the corporation as stockholder in 1891, long before any of plaintiffs' demands arose.

As to the relief sought against Adkisson, the evidence will sustain the views taken by the judge, which are as follows: That Adkisson drew out cash and goods $547; that at the time of the attachment and afterwards he had and received effects of the corporation unaccounted for to the amount of $3000, and cash $1474.21, making in all the amount adjudged against him, $5021.24.

*Opinion.*—Errors are assigned by the creditors in respect to both the judgment in favor of the bank and the judgment in reference to Adkisson, the latter being complained of as not being for a sufficient amount.

G. L. Adkisson and J. F. Dunlap were parties defendant, hence the court properly did not place them under the rule. O. E. Dunlap was president of the defendant bank, and it was a matter of discretion with the court as to placing him under the rule; and such discretion cannot be questioned on appeal except where it is shown to have worked an injury. The first assignment is therefore not well taken.

We will dispose of the case first as to Atkisson and Dunlap. For the reason that long prior to the creation of the claims involved, Dunlap had severed his connection with the concern as a stockholder, the judgment in his favor was proper.

The item of cash for which the court held Adkisson liable, $1474.23, is not brought into question. The item of bills receivable, which the court fixed at $3000 and adjudged against him, it is said, should have been $4835.64. It appears that the $1474.23 charged against this defendant as cash received, he testified was derived from the bills and notes on hand, and certainly it would be expected that the court would deduct that amount from the bills receivable. As there was testimony that the bills receivable were less than $4835.64, even as low as $4004, we are unable to say that the judge did not err in favor of appellants in fixing this item at $3000. At any rate, the state of the evidence on this subject in the record is such that we cannot intelligently revise the conclusion he reached in this respect.

Appellants also claim that the item of $547 adjudged by the court against Adkisson for cash and goods he had at various times drawn out and charged himself with, should have been $4000. In connection with the account upon which this item depends, there was testimony which could be taken to satisfactorily explain all the credits except one of $547 which Adkisson admitted was not correct. Therefore we will not disturb the judge's conclusion in this particular.

It is also assigned as error that Adkisson (and Dunlap) was liable for the full sum of plaintiff's debts by reason of the ownership of more than $500 of the stock of the corporation; and in another assignment, that they were liable for the full amount of plaintiff's debts, or for $3646.22, by reason of having drawn out undivided profits to said amount. This is based on Sayles' Civil Statutes, article 566, section 24, and article 594.

It is not shown that Adkisson acquired more than his original one share of stock. He applied money of the corporation to take up all the shares, except his and two others, and these were endorsed by the shareholders in blank and filed away with the papers of the corporation. There was, therefore, testimony upon which the court was authorized to find that Adkisson did not become the owner of those shares. Nor has article 594 application, for this article makes a director liable for the amount of any dividend knowingly paid when the corporation is insolvent. There was no dividend paid here. The application of corporate undivided profits to purchase and retire its stock is not paying a

dividend. And for better reason it does not appear that the concern was insolvent when the moneys were so disbursed.

The assignments that the court erred in not requiring Adkisson to pay or deliver to the receiver the bills receivable $3000, and cash, $1474.23, by means of contempt procedure, deal with a matter which we will not revise. There was evidence that he had disposed of these funds in paying corporate liabilities other than those represented by plaintiffs. If he did not appear to have them to turn over—and the court may have so concluded—it would have been vain for the court to take the course suggested. A judgment against him for these sums was probably all the effective relief the court could afford plaintiffs under the circumstances. That it was a contempt for Adkisson to dispose of any corporate property after knowledge that the receivership was created is plain, and he might have been dealt with accordingly; but that was a matter between the court and him.

That part of the judgment which relates to Dunlap and Adkisson we affirm.

We will now consider errors assigned in reference to the bank. The sixth error: "The court erred in not holding that the bank's debt was void as to plaintiffs, because it was for loaned money in excess of $5000, the authorized capital stock of the Waxahachie Grain & Implement Company." The seventh error: "The court erred in failing to hold that all the bank's debt in excess of $5000 was void as to plaintiffs, and should have been deducted." These assignments refer to Sayles' Civil Statutes, article 577, which reads: "Corporations have power to borrow money on the credit of the corporation not exceeding its authorized capital stock, and may execute bonds or promissory notes therefor, and may pledge the property and income of the corporation." The proof is that the two notes sued on were for money borrowed by the grain and implement company from the bank, and appellants contend that by reason of the above statute the debt was void altogether, and, if not so, at least as to the excess over $5000. Assuming in favor of appellants that they were entitled to invoke this statute, and to raise the question in this proceeding, still it is clear to our minds that the notes were valid at least for $5000; and upon this basis, treating the $5519.25 note, dated January 30, 1893, which called for interest at 10 per cent and attorney's fees, 10 per cent, as made for $5000, the result would not change the decree which awards to the bank the net proceeds of the sale of the attached property, which was less than the sum of $5000 and interest. The borrowing was certainly valid within the limit of the power. Adams & Westlake Co. v. Deyette (S. D.), 65 N. W. Rep., 474. It appeared from the testimony that the grain and implement company owed the bank a considerable sum outside of the two notes sued on, and there is testimony that the collateral notes held by it were about sufficient to secure this sum. That this sum, not included in the notes upon which the attachment was had, was for borrowed money, does not appear. Therefore the decree as to these collaterals cannot be said to be erroneous.

The eighth assignment is without merit.

The remaining question may be stated to be whether or not, when an insolvent corporation is so circumstanced that its early cessation of business must result, it may be proceeded against by attachment of its property. Appellants rely, not upon the very questions decided in Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Texas, 143, 24 S. W. Rep., 16, but upon expressions in the opinion in that case, and upon what they contend is the logical and necessary effect of what is there decided. The matter decided was that a corporation in such condition could not, by its own act, create a preference. This question, we take it, is concluded in this State by the decision. The opinion of the late chief justice recognizes the fact that the rule does not obtain in many jurisdictions. We deem it a sound rule, which can stand upon the principle that, where a corporation is without power, or practically so, to continue the exercise of its functions, to prefer a creditor would be exercising a power not necessary to the accomplishment of any purpose for which a corporation may be created, and which power cannot, under such circumstances, be implied (page 162, 86 Texas, and page 16, 24 S. W. Rep.), and upon the idea of an equitable duty resting on its managing officers to apply its assets in a certain manner.

We would not for any reason hesitate to apply the rule laid down in that case, in a case before us involving that question. But as we conceive, the rule declared does not extend further than to arrest the power of the corporation itself to do any act that may disturb the equality of its creditors, and to do so would in our judgment be to allow an equitable rule to prevail against a right given by statute.

The question under consideration has been before the Courts of Civil Appeals in this State in several cases since the opinion in the Hardware Company case. The first is Harrison v. Quay, 26 S. W. Rep., 513, 27 S. W. Rep., 897 (third district) in which it was held that the rights of creditors under our remedial statutes were not interrupted by the doctrine. In Florsheim Bros. v. Wettermark (first district) 30 S. W. Rep., 505, the same was held. Later it was held in the fifth district (Rogers v. Lumber Co., 11 Texas Civ. App., 108) that the ruling in the Hardware Company case was inconsistent with a creditor's gaining a lien by attachment. In the second district, Wright v. Euless, 12 Texas Civ. App., 136, the court applies the rule of the last mentioned case, because the Supreme Court had refused a writ of error therein. The matter is in this condition with us at this time.

It is observed that there was another question in Rogers v. Lumber Co. decisive of the attachment if correct, and we therefore are not certain that the Supreme Court concurred in the position taken on this question, or that it deemed the question to be before it, in view of the attitude of the case. Therefore we regard the parties before us as entitled to the independent opinion of this court on the question.

It has been held in other States that the theory of trust fund for creditors, in cases of insolvency of a corporation, with practical inability to

continue its corporate functions, does not affect the right of a creditor to pursue the statutory remedies. Rosenbaum v. Whitaker, 132 Ill., 81; LaGrange Butter Tub Co. v. Bank (Mo.), 26 S. W. Rep., 710; Van Alstyne v. Cook, 25 N. Y., 489. We recognize, however, that in Missouri the "trust fund" principle itself has since been repudiated. Alberger v. Bank, 25 S. W. Rep., 657. A very forcible instance of why the rule should not be held to mean a denial of the right to resort to these remedies is found in New York, where a statute which forbids the making of any transfer or assignment by the corporation or its officers in contemplation of its insolvency, to any person, is held not to interfere with preference obtained by suit. Varnum v. Hart (N. Y. App.), 23 N. E. Rep., 183.

The doctrine, in view of the cases cited in the dissenting opinion in the South Dakota case (Adams v. Deyette, 65 N. W. Rep., 471) and other cases, does not rest on too secure a foundation, and we are not willing to give it effect beyond what the Supreme Court of this State has actually held.

It is clear to our minds that courts may well apply the rule so far as to inhibit the corporation itself from doing any act which tends against the equitable distribution of its assets among its creditors, and in doing this they contravene no statute. But courts have, in our opinion, no power to extend the rule to denying to a person a right he has by the statutes of the State. See note to Lyons-Thomas Hardware Co. v. Perry Stove Co., 22 Law Ann. Rep. on page 808.

The rule, as it appears to us, is a rule directed against fraudulent preferences. The corporation being incapable of prosecuting any corporate functions, it is without even implied power to do any act save that of distributing its assets equitably among its creditors and shareholders, and such becomes the duty of its officers. To divert its property from such purposes, under such circumstances, is deemed a fraud on the part of the corporation, and therefore subject to be set aside by creditors. During the time the property of a corporation, in the condition mentioned, is not drawn to the custody of a court, or is not appropriated by it to be applied to the demands of creditors, as by an assignment, it is clear that, having the title and control, it has the power to place its property beyond the reach of creditors, and the grounds for attachment designated by statute may arise then as well as at any other time. The statute makes no exceptions to its operation when the grounds from which it is given arise, and we cannot accept the view that property so held by an insolvent corporation is as inviolate to the touch of creditors as if it were in custodia legis. In our opinion, and as the effect of our remedial statutes, it requires further legislation to admit of the rule contended for.

For these reasons we sustain the rulings of the district judge, and affirm the judgment.                                    *Affirmed.*

Delivered March 26, 1896.

Writ of error refused.