AMERICAN NATIONAL BANK OF DALLAS v. DALLAS TINWARE MANUFACTURING CO. ET AL.

Delivered March 3, 1897.

**Corporation—Insolvency—Attachment.**

A preference lien may be acquired by attachment on the assets of a corporation which has not immediately ceased business, although it is insolvent and its president contemplates an assignment for the benefit of all its creditors.

APPEAL from Dallas.   Tried below before Hon. R. E. BURKE.

*U. F. Short* and *Bennett Hill*, for appellant.—Though a corporation is insolvent, yet where it has not ceased to carry on its business in the usual course of trade, its creditors may obtain preference by attachment or other judicial process.   Carriage Co. v. Grain Co., 35 S. W. Rep., 337; 1047; Dry Goods Co. v. Wettermark, 30 S. W. Rep., 505; Harrigan

v. Quay, 27 S. W. Rep., 897; 20 A. & E. Cor. Ca., 532, 567; 23 N. E. Rep., 183; 17 Pac. Rep., 272, 280; 26 N. E. Rep., 742; 26 S. W. Rep., 710; 22 L. R. A., 808.

*George H. Plowman, J. M. Cary, Thompson & Thompson* and *T. T. Vander Hoeven*, for appellees.—Where a corporation is insolvent, and its officers are running the business at a loss, and recognize the fact that it could not be run longer, and are contemplating an assignment, its assets eo instanti become trust funds, and a creditor cannot secure a preference by attachment. Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Texas, 143; Rogers v. Lumber Co., 33 S. W. Rep., 312; Wright v. Euless, 34 S. W. Rep., 302; Bank v. Light Co., 35 S. W. Rep., 130; Carriage Co. v. Grain Co., 35 S. W. Rep., 1047; Slee v. Blum, 19 Johns., 456; Bank v. Ibbotson, 24 Wend., 478; Moore v. Whitcomb, 48 Mo., 543.

FLY, ASSOCIATE JUSTICE.—On September 14, 1894, appellant sued the Dallas Tinware Manufacturing Company, a private corporation, on two promissory notes, for the aggregate sum of $2566.84, and simultaneously applied for and obtained an attachment, which was levied upon the property of said company. J. B. Adoue intervened in the suit, alleging that the company had made a general assignment of all its assets.

The Dallas Tinware Manufacturing Company answered that at the time the attachment was levied said company was hopelessly insolvent, and was in the act of making a general assignment for the benefit of all of its creditors, with no intention of ever resuming business, and that it had ceased to be a going concern; that on September 17, 1894, it had made a general assignment to J. B. Adoue. Collusion between the appellant and J. W. Wilson, Sr., vice-president of the company, was also charged.

On September 28, 1894, J. W. Wilson, Sr., J. W. Wilson Jr., and W. W. Wilson instituted suit against the Dallas Tinware Manufacturing Company, appellant, Ben. E. Cabell (sheriff of Dallas County), and J. B. Adoue (assignee), alleging that plaintiffs were stockholders in said manufacturing company; that the president had mismanaged its affairs and appropriated its funds. The seizure of the property by the sheriff was alleged, and that Adoue was claiming the goods under an assignment which had been executed without the consent of the directors and stockholders of the corporation and was void, and further alleged. that the property of the corporation was likely to be wasted and destroyed; and they prayed for a receiver.

Appellant answered, admitting the attachment, joined in the prayer for a receiver, and claimed a first lien on the property by virtue of the attachment. Adoue answered, claiming the goods under the assignment. The president (J. J. Gensoul) of the corporation resisted the appointment of a receiver.

On September 26, 1894, the application for a receiver was granted,

and all of the assets of the corporation were turned over to him, subject to any lien that may have arisen by reason of the attachment.

On February 21, 1895, the suit instituted by appellant was, by order of the court, consolidated with the suit above mentioned. After the consolidation the National Bank of Commerce and numerous other creditors of the Dallas Tinware Manufacturing Company intervened in the suit, all praying for a ratable distribution of the assets among all the creditors.

On January 15, 1895, the court appointed James W. Brown master in chancery, who filed his report on May 3, 1895.

The case was tried by a jury, and the following special issues were submitted by the court and answered as indicated:

"(1) Issue. Was the Dallas Tinware Manufacturing Company insolvent at the time the American National Bank's attachment was levied, viz. September 14, 1894? And in this connection you are told that under the law a person, firm, or corporation is insolvent when they are unable to pay off and discharge their debts as the same become due and payable. Answer. We, the jury, find that the Dallas Tinware Manufacturing Company was insolvent on September 14, 1894. [Signed] F. R. Bowles, Foreman.

"(2) Issue. At the time, or just before, the writ of attachment was levied at the suit of the American National Bank against the Dallas Tinware Manufacturing Company: (1) Had said company ceased doing business? (2) Or had said company made an assignment for the benefit of its creditors? (3) Or had said company taken, or was it in the act of taking, any steps which would practically have incapacitated it from conducting its business with reasonable prospects of success? (4) Or were its financial embarrassments at the time such that an early suspension and failure would have ensued? (5) Did the American National Bank, through its officers, know of the financial surroundings and condition of the Dallas Tinware Manufacturing Company at the time the attachment was levied? Answer. (1) No. (2) No. (3) Yes. (4) Yes. (5) Yes. [Signed] F. R. Bowles, Foreman."

Upon the foregoing answers the court rendered a judgment for appellant for its debt, but held that it had not any lien on the property of the Dallas Tinware Manufacturing Company, but that the funds should be ratably distributed among all the creditors.

The evidence showed that the Dallas Tinware Manufacturing Company was a corporation organized under the laws of Texas for the purpose of manufacturing and selling tinware and doing a general tinware business in the city of Dallas. On September 14, 1894, said corporation was insolvent, but on that date, when the writ of attachment was issued and levied on the property, had not ceased to carry on its business in the usual course of trade. No assignment had been made at the time the attachment was levied, but one was made on September 17, 1894.

The testimony as to steps being taken towards making an assignment

before the attachment was contradictory.   J. M. Carey, a law student in the office of the attorneys for appellees, testified that J. J. Gensoul, president of the corporation, and James Maroney, the secretary, were in the law office several days prior to September 14, when the attachment was issued, seeking advice as to making a general assignment of the corporation effects; and according to his recollection the instrument was drawn but not signed, the delay being attributed to the advice of the attorney that reasonable notice should be given to all the directors before the assignment could be made.   The president of the corporation stated that "it was being considered whether to assign for the benefit of all the creditors, or throw the company into a receivership."   The secretary said:   "The only thing I ever heard in regard to the company making an assignment before the attachment was a month or six weeks prior to the attachment.   Gensoul came into my office considerably disturbed that day on account of some trouble he had with the Wilsons, and suggested that perhaps the best way to end the trouble was to make an assignment, or something of that kind.   I think I talked him out of it.   This is the only conversation I have had about an assignment." The witness denied having been in the aforesaid attorney's office, before the attachment, in regard to the affairs of the company.

It was definitely settled by the opinion of the late Chief Justice of the Supreme Court (Lyons-Thomas Hardware Co. v. Perry Stove Manufacturing Co., 86 Texas, 144) that the assets of an insolvent corporation, which had ceased to carry on business and did not intend to resume, became trust funds, and each creditor would have the right to a ratable share of the proceeds of all the assets of the corporation not subject to priorities lawfully existing when the condition above stated arose.   In that opinion it was only held that neither the corporation nor its officers could, after it had ceased to carry on business, and did not intend to resume, prefer a creditor by giving a deed of trust.

But in the case of Shoe Co. v. Thompson, 35 S. W. Rep., 473, the Supreme Court further decided that after insolvency and cessation from business a creditor cannot acquire a lien upon the corporation assets by attachment or other judicial process.

In the case of Moon Bros.' Carriage Co. v. Waxahachie Grain & Imp. Co., Id., 1047, the same court, in refusing a writ of error from this court, held that the decision of this court was correct, because "the corporation in question in this case, though insolvent when the attachment issued, had not ceased to carry on its business in the usual course of trade, and in our opinion the point had not been reached when the property of the corporation could be deemed a trust fund for the benefit of all its creditors alike."

In that case this court found the fact that:   "At the time of the attachment the grain and implement company, a corporation existing under the laws of Texas, and organized in 1888, was insolvent; and the conditions surrounding it were such that it could not hope to continue its business much longer, and an early suspension must, in the ordi-

nary course of events, have ensued." Moon Bros. Carriage Co. v. Waxahachie Grain & Imp. Co., 35 S. W. Rep., 337.

The only material, difference between the facts in the case last cited and the one now under consideration is the fact that the president of the Dallas Tinware Manufacturing Company had contemplated an assignment for the benefit of all the creditors, and perhaps had gone so far as to have an attorney to prepare the deed of assignment. The question, then, is presented, did the intent of the president of the corporation to execute a general deed of assignment at some future day impress the trust character upon the funds of the corporation, so that the individual creditor of the corporation could not acquire a preference lien upon the assets by attachment? While the decisions of the Supreme Court have gone quite far in protecting, as trust funds, from judicial writs, the assets of corporations, yet there has been no opinion of the Supreme Court that has held that mere contemplation of, or preparations looking to, a future general assignment would impress the trust fund character upon the property of an insolvent corporation. The test applied has been, had the corporation, when the attachment was issued, ceased business, with no intention to resume?

It would seem, from the language of the second issue summitted to the jury, which is similar to language found in the opinion in Lyons-Thomas Hardware Co. v. Perry Stove Manufacturing Co., 86 Texas, 144, that the trial court concluded that it had been held in that opinion that if the corporation "had taken, or was in the act of taking, any steps which would practically have incapacitated it from conducting its business with reasonable prospects of success," the point had been reached when the property had become trust funds for all the cred itors. No such inference can be legitimately drawn from that decision.

It is true that very similar language is used in that decision, but it is copied from the case of Corey v. Wadworth (Ala.), 11 So. Rep., 353. But the theory of that opinion was not adopted by the Supreme Court, but it was clearly indicated by language immediately following the quotation that the rule enunciated was not adopted. It was not necessary to the decision of the case before the Supreme Court, and was adopted only in so far as it held "that when a corporation's assets are insufficient for the payment of its debts, and it has ceased to do business," the point is reached where its property cannot be attached at the instance of a creditor.

The assertion in the opinion in Rogers v. Lumber Co., 33 S. W. Rep., 312, that the language of the opinion in Corey v. Wadsworth was approved by Judge Stayton, seems to be founded on a misconception of his language. The Court of Civil Appeals on rehearing in the Rogers Lumber Co. case receded from the position it had taken in its original opinion, that a writ of attachment could not properly be levied on corporation assets after its insolvency, and placed its decision on the ground laid down in Lyons-Thomas Hardware Co. v. Perry Stove Manufactur-

ing Co., that when a corporation has ceased to do business its property becomes a trust fund for the benefit of all the creditors.

In the case of Farmers' & Merchants' National Bank v. Waco Electric Railway Co., 36 S. W. Rep., 131, it was said by the Court of Civil Appeals of the Third District: "The Supreme Court has recently decided that no preference over general creditors can be acquired by levy upon the property of an insolvent corporation." But we have not seen any opinion of the Supreme Court in which such doctrine was enunciated, but in the cases of Shoe Co. v. Thompson and Moon Bros.' Carriage Co. v. Waxahachie Grain & Imp. Co., hereinbefore cited, it was distinctly held that a preference over general creditors would be obtained by the levy of an attachment upon the property of an insolvent corporation, if it had not ceased to carry on its business in the usual course of trade.

Following those opinions,—the latest enunciation (so far as we know) of the law by the Supreme Court,—we conclude that the responses of the jury to the issues in regard to steps having been taken by the corporation that would have incapacitated it from conducting its business with a prospect of success, or as to a probable early suspension of business by the corporation, or knowledge of appellant as to the financial condition of the corporation, were made in answer to immaterial issues, and that the judgment of the District Court on the response to the first issue and the first and second responses to the second issues should have been to establish the attachment lien upon the goods in favor of appellant.

The judgment of the District Court adopted the report of the master, in numerous respects, and there is no complaint of any portion of it, except that which denied the attachment lien to appellant, and provided for a distribution of the proceeds of the attached property among the creditors, and will therefore be affirmed, except in that particular, on which it is reversed; and judgment will be here rendered establishing and foreclosing the attachment lien on the property levied on by virtue of it.

*Reversed and rendered.*

Writ of error refused.