GENERAL ELECTRIC CO. v. CANYON CITY ICE & LIGHT CO. et al.

(Court of Civil Appeals of Texas. Feb. 11, 1911. Appellant's Rehearing Denied March 18, 1911.)

1. MECHANICS' LIENS (§ 291*)—FORECLOSURE—JUDGMENT—NUNC PRO TUNC AMENDMENT—PERSONS AFFECTED.

An amendment of a judgment by a nunc pro tunc order after the term at which the judgment was rendered, so as to have the judgment include in the foreclosure of a materialman's lien block 40, in addition to block 24, alone included by the original judgment, and which alone the recorded account, by which the lien was fixed, purported to cover, was ineffective against a stranger, who prior to the judgment was given a deed of trust on block 40.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 291.*]

2. CORPORATIONS (§ 566*)—INSOLVENCY—RECEIVERS—PRIORITIES OF CLAIMS.

Such preference not being within those provided by Rev. St. 1895, art. 1472, one who furnished coal to a corporation during the month prior to appointment of a receiver for it cannot be given a preference therefor over lienholders; there having been no net profits from the receiver's operation of the business.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 566.*]

3. CORPORATIONS (§ 544*)—INSOLVENCY—PREFERENCES—MORTGAGES.

A mortgage given to a creditor by a corporation is not invalid because the corporation was involved at the time, it not having ceased to carry on its business, but having continued the regular operation thereof till appointment of a receiver, more than seven months later.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 544.*]

4. MORTGAGES (§ 183*)—TAKING MORTGAGE SUBJECT TO PRIOR MORTGAGE.

One asserting the validity of a mortgage given it by a corporation expressly subject to a prior mortgage given by it cannot urge the invalidity of such prior mortgage on the ground of the insolvency of the corporation.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 442–448; Dec. Dig. § 183.*]

5. CORPORATIONS (§ 568*)—INSOLVENCY—PREFERENCES—MORTGAGES.

A mortgagee of part only of a corporation's property should not by reason thereof on sale of its property by a receiver be given a preference in the proceeds of all its property.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 568.*]

Appeal from District Court, Randall County; J. N. Browning, Judge.

Suit by the General Electric Company against the Canyon City Ice & Light Company and others. From the judgment, plaintiff appeals. Reversed and remanded, with instructions.

Madden, Trulove & Kimbrough and Coke Miller & Coke, for appellant. A. S. Rollins, B. Frank Buie, J. C. Hunt, Jasper N. Haney, and Lumpkin, Merrill & Lumpkin, for appellees.

CONNER, C. J. This suit was instituted by appellant against the appellee Canyon City Ice & Light Company to recover upon an indebtedness by promissory note of $2,-019.74, with interest and attorney's fees, and to foreclose a deed of trust given to secure the same. Appellant also made parties to the suit the First National Bank of Canyon and the Fulton Lumber Company, which were asserting liens on property of the Ice & Light Company, and a receiver was later appointed. After the appointment of the receiver numerous other creditors of the Ice & Light Company intervened, and the contest finally became one for priority in payments. The trial was before the court without a jury, and resulted in a judgment against the Canyon City Ice & Light Company in favor of all parties for the amounts and liens severally claimed by them, and the receiver was ordered to sell the entire property of the Ice & Light Company, and to apply the proceeds of the sale and of the income arising from the operation of the property, after the payment of the costs of the receivership, in liquidation, first, of the sum of $704.50, with interest and costs adjudged to the appellee the Fulton Lumber Company; second, of the sum of $73.75, with interest and costs adjudged to intervener and appellee W. H. Hicks for coal furnished the Ice & Light Company during the month immediately preceding the appointment of the receiver; third, of the sum of $11,674.60, with interest and costs adjudged to the appellee the First National Bank of Canyon; and, fourth, of the sum of $2,503.11, with interest and costs adjudged to the appellant the General Electric Company. The balance of such proceeds, if any, the receiver was directed to pay ratably among the remaining intervening creditors,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

which we do not deem it necessary to name.

[1] The first assignment that we shall notice is the third in appellant's brief, wherein complaint is made to the effect that it was error to give the Fulton Lumber Company a preference over appellant out of the income from the operation of the property while in the hands of the receiver and out of the proceeds arising from the sale of the entire property of the Canyon City Ice & Light Company, including its franchises, and we think the complaint is well grounded. The evidence shows without dispute that the Lumber Company on August 4, 1908, recovered a judgment against the Ice & Light Company for $625, theretofore contracted to be paid for certain material, with costs of suit and a foreclosure of the materialman's lien upon block 40, in Heller's addition to the town of Canyon City. This judgment was amended by a nunc pro tunc order entered on February 10, 1909, so as to include within the foreclosure proceedings block 24 in the Lair addition to the town of Canyon City, together with the buildings and improvements thereon situated. Prior, however, to the entry of either the original or amended judgment in favor of the Lumber Company, although subsequent to the filing of the Lumber Company's original account (fixing its materialman's lien), the appellant Electric Company secured, and on, to wit, June 20, 1908, filed for record the deed of trust sued upon in this suit and established by the court's judgment. It further appears that block 40, in the Heller's addition, and block 24, in the Lair addition, are adjoining blocks with no visible marks showing the boundary between them, and that the principal improvements of the Ice & Light Company are situated on said block 24. It also appears that neither appellant nor any of the other parties to this suit except the Ice & Light Company were given any notice of the proceeding in which the original judgment of August 4, 1908, in favor of the Lumber Company, was amended; the amendment occurring after the institution of this suit on November 29, 1908, and after the appointment of the receiver. It also appears that the account of the Lumber Company, which was recorded and by which its materialman's lien was fixed, purported to cover only said block 40 of the Heller addition.

Our statute (Rev. St. 1895, art. 1356), provides that, "where there shall be a mistake in the record of any judgment or decree, the judgment may, in open court, after notice of the application therefore has been given to the parties interested in such judgment or decree, amend the same according to the truth and justice of the case and thereafter the execution shall conform to the judgment as amended." The power to amend a judgment thus given is not limited by the statute to the term during which the mistaken entry shall have been made, but, as stated in Ry. v. Roberts, 98 Tex. 42, 81 S. W. 25, all authorities agree that a court has the continuing power after the adjournment for the term to correct its minutes and to make them speak the truth by the entry of an order that has in fact been made or a judgment that has actually been rendered. When such amendments are made at a subsequent term, the amended judgment is generally designated as a nunc pro tunc judgment, and will, as between the parties and those having notice thereof, relate back and have effect as of the date of the original entry. See 1 Black on Judgments, § 136; 1 Freeman on Judgments, § 56. But it is uniformly held, so far as we know, that such nunc pro tunc judgments will not affect third persons who have in the meantime acquired rights without notice of the rendition of the amendment. Says Mr. Freeman in section 66 of the volume cited: "Courts in determining whether or not to amend or perfect their records are controlled by considerations of equity. If one not a party to the action has, when without notice of the rendition of the judgment or of facts from which such notice must be imputed to him, advanced or paid money or property, or, in other words, has become a purchaser or incumbrancer in good faith and upon a valuable consideration, then the subsequent entry of such judgment nunc pro tunc will not be allowed to prejudice him. Otherwise its effect against him is the same as if it had been entered at the proper time." Says Mr. Black in section 137 of the volume above cited: "When a judgment is entered nunc pro tunc, its effect, so far as it operates by relation back to the earlier date, must be confined to the rights and interests of the original parties; at least, it will not be allowed to work detriment to the rights of innocent third persons acquiring interests without notice of the renditon of any judgments." So in 23 Cyc. p. 883, it is said: "An amendment of a judgment will not be allowed to prejudice the rights of third persons such as subsequent judgment creditors, purchasers, or mortgagees who have acquired interest for value, unless where it is taken with notice, or where the amendment is made at the same term at which the judgment was rendered. The order allowing an amendment should contain a saving of the intervening rights of third persons, but the law will make this reservation whether it is expressed or not." An application of the principle announced by these authorities excludes the Lumber Company from the preferences given it by the court as to the proceeds of the income during the operation of the property by the receiver, and such as arise from the sale of any of the property of the debtor company, except block 40, upon which alone the Lumber Company's lien extended as against the parties in this suit.

[2] In the fifth assignment complaint is also made of the preference given to the intervener, Hicks, and this complaint also we think well founded. It is not contended that

Hicks had a lien of any kind or character upon any of the property of the Ice & Light Company or upon the income thereof; his claim for preference being predicated upon the contract with the Ice & Light Company for the payment of the coal furnished out of the month's income following the delivery of the coal. Appellee cites in support of the court's action in giving this preference the case of McIlhenny v. Binz, 80 Tex. 1, 13 S. W. 655, 26 Am. St. Rep. 705. In that case certain laborers and materialmen were awarded preferences over express contract lien creditors, including a preference given certain parties for coal furnished the railway company within six months prior to the appointment of the receiver, but by a careful reading of the opinion it will be seen that in that case certain proceeds arising from the operation of the railroad while in the hands of the receiver had been applied in payment of interest due the lien-holding creditors and in making betterments upon the property of the railroad. In such cases it is very generally held that creditors who have labored, or furnished supplies, made repairs or useful improvements in the operation, maintenance, and betterment of the property, and who have been suddenly deprived of their remedies at law by the appointment of a receiver, are equitably entitled to priority in payment from the net income of the property while in the hands of the court. See 5 Pomeroy's Equity, §§ 224, 225; Miltenberger v. Logansport, C. & S. W. R. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117; and authorities cited in the opinion already referred to. But in the case we now have before us it is not claimed that there has at any time been any net income arising from the operation of the ice and light plant while in the hands of the receiver. Indeed, it seems to be undisputed that there has been no such income, nor can it be said that the coal furnished was in the way of betterments to the property, nor for other reason that the claim therefor should be placed on a plane entitling it to greater equitable consideration than the claims of numerous other creditors in this case whom the record shows to have furnished before the receivership various supplies used by the Ice & Light Company. In such cases we think the undoubted weight of authority is against displacement of bona fide lien-holding creditors in the court's distribution of the proceeds arising out of the corpus of the property. The preference given Hicks is certainly not within the preferences specified in our statute on the subject, viz., Rev. St. art. 1472, nor can it be supported, we think, by the later authorities. See Sullivan & Co. v. Briquette & Coal Co., 94 Tex. 541, 63 S. W. 307; Ellis v. Vernon Ice, Light & Water Co., 4 Tex. Civ. App. 66, 23 S. W. 857; Phillips v. Wise et al., 31 S. W. 429; Kneeland v. American Loan & Trust Co. of Boston, 136 U. S. 89, 10

Sup. Ct. 950, 34 L. Ed. 379; Gregg v. Metropolitan Trust Co., 197 U. S., 183, 25 Sup. Ct. 415, 49 L. Ed. 717. In the case last named, after reviewing many authorities, including the case of Miltenberger v. Logansport C. & S. W. R. Co., supra, the Supreme Court of the United States say that the principle of authorizing the receiver to pay debts for labor or supplies furnished within six months out of the income stand on the special theory which has been developed with regard to income, and afford no authority for a charge on the body of the fund, and proceeded upon the theory announced in the Kneeland Case and in the case from our own court above cited, that, in the absence of the special circumstances indicated, the court has no right to invade the solemn contractual relation entered into between the lien-holding creditors and the corporation whose assets are being administered. It follows that Hicks should have been denied any preference over other general creditors.

[3] But one other branch of the case remains for disposition, and that relates to the preference given to the First National Bank of Canyon. Appellant first insists that the bank's deed of trust and chattel mortgage are invalid because of the insolvency of the Ice & Light Company at the date of the execution of the bank's mortgages, and in support of this contention cites Lang v. Daugherty, 74 Tex. 228, 12 S. W. 29, and Lyons-Thomas v. Carey Stove Co., 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802, and other cases applying the doctrine that, when a corporation becomes insolvent and ceases to carry on the business for which it was organized, its assets become the common fund for the payment of debts ratably among its creditors, but in this case, we think, the principle has no application, for the reason that at the time the bank secured its original mortgage the Ice & Light Company, though doubtless somewhat involved, had by no means ceased to do business. The bank secured its original mortgage in April, 1908, and the Ice & Light Company continued the regular operation of its business until the appointment of the receiver herein. See Moon Bros. Carriage Co. v. Waxahachie Grain & Implement Co., 89 Tex. 511, 35 S. W. 1047; American Nat. Bank of Dallas v. Dallas Tinware Mfg. Co., 15 Tex. Civ. App. 631, 39 S. W. 955; College Park Electric Belt Line v. Ide et al., 15 Tex. Civ. App. 273, 40 S. W. 64. [4] Moreover, it is undisputed that appellant's mortgage which was later executed on, to wit, the 19th day of June, 1908, contained the express provision that it was "made subject to that certain mortgage for $9,395.55 dated April 27, 1908, in favor of First National Bank of Canyon City executed by said Canyon City Ice & Light Company." Appellant, therefore, asserting the validity of its own mortgage, is in no attitude to urge the invalidity of the bank's mortgage on the

ground of insolvency. See 1 Jones on Mortgages, § 595; Park v. Prendergast, 4 Tex. Civ. App. 566, 23 S. W. 535, and authorities therein cited.

[5] We think, however, that the court was in error in a particular pointed out in the fourth proposition under the sixth assignment, which we have just been discussing. The bank's mortgages only covered certain office furniture and block 40 and block 24 hereinbefore mentioned "together with all improvements and machinery thereon and connected therewith, together with all light lines and everything connected with said lines." While the order of the court gives the bank a preference in the proceeds arising from the sale of all of the property and assets of the company, real and personal, including its franchises, real estate, and improvements, all engines, boilers, dynamos, switchboards, pumps, tanks, piping, doors, supplies, poles, lines, wires, transformers, light arresters, meters, wiring, lamp equipment, furnaces, safes, desks, and personal property of every kind. It thus appears that the bank's preference was made to extend to property not covered by its mortgages. The proceeds of all such property not so covered by the lien of the Lumber Company and the bank's mortgages should be applied to appellant's mortgage debt in so far and in so far only as appellant's lien may cover such property, and the remainder of such proceeds, if any, should revert to the common fund and be ratably applied in payment, so far as possible, of all unsecured sums due by the terms of the judgment.

We find no other error as assigned in the proceedings nor anything further requiring discussion, and would ordinarily reform and affirm the judgment, but for the reasons that nothing in the record informs us of the value of block 40 upon which the lumber company's lien and preference must rest nor of other property constituting a part of the assets of the Ice & Light Company not covered by the mortgages of either appellant or of the bank. Moreover, the appeal has been prosecuted upon a cost, and not upon a supersedeas, bond, and the receiver may, in obedience to the terms of the judgment, already, have sold the property involved in the controversy, and we think we should therefore reverse the judgment and remand the case in order that the court may ascertain the value, or relative value, of block 40 and of the other unincumbered property, if any.

It is therefore ordered that the judgment be reversed and the cause remanded, with instructions to adjudge as before except in so far as said former judgment conflicts herewith and in so far as may be necessary to determine the value or proportional value of block 40, Heller's addition to the town of Canyon, upon which the lien of the Lumber Company rests, and of the unincumbered property, if any, of the Ice & Light Company, and to make distribution of the proceeds of receivership as herein indicated.

It is further ordered that the costs of this appeal be taxed against appellees W. H. Hicks, Fulton Lumber Company, and the First National Bank of Canyon.